IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | Criminal Action No. 12-00211-KD-C |
| ) | |
| PATRICK CARLISLE, ) | |
| ) | |
| Defendant. ) | |

## ORDER

This action is before the Court on Defendant Patrick Carlisle's "Motion to Void, Vacate, Correct Sentence with Alternative Compassionate Release" (doc. 57), "'Ex Parte' Motion for Access to Courts and/or Request for Appointment of Counsel" (doc. 59), "Motion to Void, Vacate Correct Sentence" (doc. 60); letter in support (doc. 63), "Emergency Request for Appointment of Counsel" (doc. 64), and Motion for Compassionate Release (doc. 65) . Upon consideration, and for the reasons set forth herein, the motions (docs. 57, 59, 60, 65) are dismissed for lack of jurisdiction, his requests for appointment of counsel (docs. 59, 60, 64, 65) are denied, and his requests for a hearing (docs. 60, 64) are denied.

I. Background

In April 2013, Carlisle was sentenced to a term of 51 months for the offense of felon in possession of a firearm (doc. 33). His three-year term of supervised release commenced April 14, 2016. Carlisle was arrested by Mobile County Sheriff's Deputies on March 12, 2018. He was charged with several misdemeanor offenses and the felony offense of possession of a controlled substance, methamphetamine. A federal petition for warrant or summons for an offender under supervision was filed. Carlisle was arrested pursuant to a Writ of Habeas Corpus

as Prosequendum on March 21, 2018 (doc. 40, sealed; doc. 42).  His initial appearance was held that same day, and Carlisle was ordered detained (doc. 46).

On June 12, 2018, this Court revoked Carlisle's supervised release term and sentenced him to serve 21 months (doc 56).  The Court did not impose this sentence to serve concurrent with any other sentence.  He was remanded to the custody of the United States Marshal and returned to the custody of the State of Alabama.

In November 2018, the State of Alabama sentenced Carlisle to a term of five years for the controlled substance offense.  According to Carlisle, the state court judge ordered his state sentence to run concurrent with his federal sentence in this action.  Carlisle remained in state custody until February 28, 2020 when he was released and taken into federal custody to begin serving his 21-month federal sentence. His estimated release date is August 25, 2021.  He is presently incarcerated at the United States Prison in Atlanta, Georgia.

II. <u>Analysis</u>

A. <u>Credit against his federal sentence for time served in state custody</u>

Carlisle moves the Court to order the Bureau of Prisons "to credit [him] with time served since 2018" in federal and state custody, and release him (doc. 57, p. 2; doc. 60, doc. 63).  In his opinion, his 21-month federal sentence began on March 21, 2018, when he was arrested on the federal warrant, and therefore, his federal sentence should have concluded in December 2019, with credit for good time (doc. 63).  He asserts that after he was sentenced in this Court he "was sentenced in the State, for relevant conduct and the State Judge ran [his] sentence concurrent" with the sentence imposed in this Court, but "[s]omehow the BOP is not counting [his] time, they have [him] set for release in Aug 2021" (doc. 63).

Carlisle's federal revocation sentence, imposed in June 2018, was not ordered to run concurrent with any other sentence (doc. 56). The fact that the state court judge in November 2018 ordered Carlisle's state sentence to run concurrent with his federal sentence, does not convert his federal sentence into a concurrent sentence. See 18 U.S.C. § 3584(a) ("Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.").

As to any credit which might be due, pursuant to 18 U.S.C. § 3585(b) a "defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--

> (1) as a result of the offense for which the sentence was imposed; or
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C. § 3585(b).

However, the "[a]uthority to calculate credit for time served under section 3585(b) is vested in the Attorney General, not the sentencing court." United States v. Alexander, 609 F.3d 1250, 1259 (11th Cir. 2010) (citing United States v. Wilson, 503 U.S. 329, 334, 112 S. Ct. 1351, 1355 (1992)); United States v. Anderson, 517 Fed. Appx. 772, 775 (11th Cir. 2013) ("The Attorney General, through the BOP, is authorized under § 3585(b) to compute sentence-credit awards after sentencing."); United States v. Hardy, 672 Fed. Appx. 978 (11th Cir. 2017) ("After a defendant begins serving his sentence, the Attorney General, through the Bureau of Prisons, has exclusive authority to determine whether the defendant has spent time in official detention

and to compute the amount of credit to which he is entitled.") (citation omitted). Therefore, this Court does not have authority to calculate credit for time served in custody. [1]

If Carlisle pursues a re-calculation of his credit through the BOP's administrative remedy procedure, and exhausts all procedures available, he may then file a petition pursuant to 28 U.S.C. § 2441 in the federal court, if he is not satisfied with the results. United States v. Leverette, 721 Fed. Appx. 916, 917 (11th Cir. 2018) (if the BOP declines to award credit, he may pursue a "claim through the Bureau's Administrative Remedy Program.") (citing 28 C.F.R. § 542.10, et seq). Although, exhaustion of administrative remedies is no longer a jurisdictional requirement, it is still a requirement that must be met before a petition is filed in the courts. Id. Additionally, the § 2241 petition must be filed in the United States District Court where Carlisle is confined. Vance v. United States, 476 Fed. Appx. 234 (11th Cir. 2012) (a § 2241 petition "may be brought only in the district court for the district in which the inmate is incarcerated.") (citation omitted). Carlisle is confined at USP Atlanta. Therefore, the federal court where he should file his motion is in the Northern District of Georgia.

Accordingly, Carlisle's motion requesting this Court to award credit against his sentence for time spent in state custody is dismissed for lack of jurisdiction.

B. Compassionate release

Alternatively, Carlisle moves the Court to reduce his "sentence on Compassionate Release due to having served time since 2018 and Covid-19" (doc. 57; doc. 65 (same)). Carlisle argues that he is entitled to compassionate release because he has overserved his sentence and because he "has been stuck in USP Atlanta, in transit, since the beginning of the year, due to Covid-19 conditions at USP Atlanta are deplorable" (doc. 59; doc. 57 (same); doc. 65 (same)).

---

[1] The Bureau of Prisons has contacted the Court regarding retroactive designation whereas to provide credit to Carlisle. The Court has indicated it has no objection to a retroactive designation.

Once a sentence is imposed, the "authority of a district court to modify an imprisonment sentence is narrowly limited by statute." <u>United States v. Phillips</u>, 597 F.3d 1190, 1194-95 (11th Cir. 2010); <u>United States v. Shaw</u>, 711 Fed. Appx. 552, 554-55 (11th Cir. 2017) (same). Specifically, the district court may not modify a term of imprisonment once it has been imposed except as set out in 18 U.S.C. § 3582(c). See <u>United States v. Pubien</u>, 805 Fed. Appx. 727, 729 (11th Cir. Feb. 25, 2020) (citing 18 U.S.C. § 3582(c)).

The compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act, provides that the district court "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the [applicable] factors set forth in 18 U.S.C. § 3553(a)", if the district court finds that "extraordinary and compelling reasons warrant such a reduction" and the reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

As stated above, the Court may act on the motion only after Carlisle has exhausted his administrative rights to appeal the BOP's failure to file a motion for compassionate release, or more than 30 days have passed since the Warden received Carlisle's request for compassionate release. Carlisle has not provided any evidence that he has complied with either of the two statutory prerequisites. Therefore, the motion for compassionate release is dismissed without prejudice for failure to show compliance with either of the statutory prerequisites.

Additionally, even if Carlisle had met the statutory prerequisites, he would not be entitled to compassionate release on the grounds alleged. "Extraordinary and compelling" reasons are not defined in the statute. Instead, Congress gave the Sentencing Commission the duty to promulgate general policy statements regarding sentence modifications pursuant to 18 U.S.C. § 3582(c)(1)(A) and stated that the Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Congress also stated that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Id.

Before the First Step Act was enacted, the Sentencing Commission promulgated the following policy statement, with criteria and examples:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1) (A) Extraordinary and compelling reasons warrant the reduction; or . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.[2]

The Application Notes to the Policy Statement includes four examples of extraordinary and compelling reasons for consideration of a reduction in sentence under § 3582(c)(1)(A). The only example that could possibly apply is found in Application Note 1(D).[3]

---

[2] Subparagraph (B) provides for consideration of compassionate release if "[t]he defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned[.]"  Since Carlisle is 43 years old, subparagraph (B) cannot apply to him.

Under Application Note 1(D), the district court may consider "Other Reasons" if "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." Id., cmt. n. (1)(D). Carlisle has not alleged any reasons that meet the descriptions in Application Notes 1(A) – (C). Therefore, his reasons cannot act "in combination with" (Id.). Therefore, the Court looks to whether there are extraordinary and compelling reasons "other than" the reasons described in Application Notes 1(A) – (C). Carlisle relies upon his opinion that the conditions at USP Atlanta are "deplorable" because of safety precautions due to the Covid 19 pandemic. Specifically, the prison has limited the amount of time that inmates are out of their cells. He also relies upon his belief that he has overserved his revocation sentence. However, these reasons are not comparable or analogous to the criteria in the Policy Statement and are not extraordinary or compelling reasons for compassionate release. See United States v. Fox, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("those other extraordinary and compelling reasons should be comparable or analogous to what the Commission has already articulated as criteria for compassionate release.").

C. Access to courts

Carlisle argues that the staff at USP Atlanta has not allowed access to legal computers and the law library for a sufficient amount of time to conduct legal research to prepare his motion (docs. 57, 59, 64).[4] Carlisle states that because of Covid 19 precautions, inmates are not

---

[3] Carlisle does not allege that he has a terminal illness, a serious physical or medical condition or a serious functional or cognitive impairment, or that he is experiencing deteriorating physical or mental health because of the aging process. He does not allege that his family circumstances meet the criteria in Application Note 1(C), or that he meets the age requirement in Application Note 1(B) (at least 65 years old). U.S.S.G. § 1B1.13, cmt. n. 1(A), (B) & (C).

[4] Carlisle provides a memorandum from his Case Manager stating that "due to the Coronavirus pandemic most inmate movement has been terminated" and that Carlisle "does not have access

allowed out of their cells but for a limited time. Specifically, he alleges that he is "being denied access to law library" and allowed "out of the cell less than 4 hours a week" (doc. 59) and that because he is out of his cell "for less than 4 hours a week" he doesn't "have time to investigate and research [his] case" (doc. 64). He moves the Court to "issue an order upon USP Atlanta to grant adequate time for legal research" and to grant him "access to legal computers" (docs. 57, 59, doc. 64).

In Bounds v. Smith, 430 U.S. 817, 828, 97 S. Ct. 491 (1977), the Supreme Court explained that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." See Lewis v. Casey, 518 U.S. 343, 351, 116 S. Ct. 2174 (1996) (""[P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'") An inmate's access to courts can be met by different methods, including access to law libraries, court-provided forms, or minimal access to legal advice. Id. at 352.

A cause of action against federal officials acting in their individual capacity for violations of federal constitutional rights was established in Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999 (1971); Nalls v. Coleman Low Fed. Inst., 307 Fed. Appx. 296, 297–98 (11th Cir. 2009) (same). Thus, to the extent that Carlisle's claim could be construed as a civil rights claim against the Warden at USP Atlanta for a violation

---

to the law library as needed to work on his case/motion/appeal and will most likely not make any deadline(s) set forth by the courts" (doc. 57, p. 4; doc. 64, p. 4).

of his constitutional right of access to the court,[5] this Court lacks personal jurisdiction. Those claims must be brought in the district court in the district where the Warden resides or is employed. See Cosby v. United States, 2009 WL 282 1943 (M.D. Ga. 2009) ("Moreover, the FMC–Carswell defendants reside, and are employed, in Fort Worth, Texas, which is in the Northern District of Texas. Therefore, plaintiff's claims against these defendants may not be pursued in this Court because this Court lacks personal jurisdiction over them and venue is improper.") (citations omitted). To the extent that this could be construed as a civil rights claim against the Bureau of Prisons, the Court lacks subject matter jurisdiction. Nalls, 307 Fed. Appx. at 298 ("As an initial matter, the district court lacked subject matter jurisdiction over Nalls's claims against the Bureau of Prisons because Bivens does not extend to federal agencies"). Accordingly, this claim is dismissed for lack of jurisdiction.

D. Appointment of counsel

Carlisle moves for appointment of counsel (docs. 59, 60, 64, 65). Carlisle states that he was indigent when counsel was appointed during the revocation proceeding and that he remains indigent. He asserts that counsel is necessary to help him prepare and file his motions for relief.

There is no Sixth Amendment right to appointment of counsel in post-conviction proceedings. See Pennsylvania v. Finley, 481 U.S. 551, 555, 107 S. Ct. 1990 (1987) ("Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further"). However, the Criminal Justice Act, 18 U.S.C. § 3006A(a)(2)(B), provides for appointment of counsel for an indigent habeas petitioner if the "interests of justice so require." "[W]here a

---

[5] See Whitfield v. Thompson, 165 F. Supp. 3d 1227, 1238 (S.D. Fla. 2016) ("It is well-established that prisoners have a constitutional right of access to the courts under the Due Process Clause, and that access must be 'adequate, effective, and meaningful.'") (quoting Bounds v. Smith, 430 U.S. 817, 821, 822, 97 S. Ct. 1491, 1494, 1495, 52 L.Ed.2d 72 (1977).

defendant seeks appointment of counsel in a federal post-conviction proceeding prior to an evidentiary hearing, courts generally decline to grant the request unless it appears (1) the defendant has presented a constitutional claim with at least a fair likelihood of success on the merits, (2) the claim is factually complex and legally intricate, and (3) the facts are largely underdeveloped and the defendant, due to his incarceration and indigency, is severely hampered in his ability to investigate them." White v. Alabama, No. 2:12CV02960-LSC-SGC, 2015 WL 5475626, at *1 (N.D. Ala. Sept. 17, 2015) (citation omitted).

Carlisle seeks appointment of counsel to help correct the alleged credit calculation errors made by the BOP.[6] Assuming that there were errors in calculating his credit, and that those errors could provide a basis for a constitutional claim with a fair likelihood of success, the claim is not factually complex or legally intricate. Also, Carlisle has sufficiently developed his facts, such that his incarceration and indigency do not appear to have hampered his ability to investigate his claims. Therefore, at this point, the interests of justice do not weigh in favor appointment of counsel.

With respect to his motion for appointment of counsel to assist with preparation of his motion for compassionate release, there is no constitutional or statutory right to counsel for "motions filed under § 3582" but, instead " 'the decision to appoint an attorney is left to the discretion of the district court.'" United States v. Reese, No. 2:12-CR-87-WKW, 2020 WL 3621316, at *1 (M.D. Ala. July 2, 2020) (quoting United States v. Webb, 565 F.3d 789, 792 (11th Cir. 2009)) (addressing the right to counsel in the context of a § 3582(c)(2) motion). Again, the Court finds that appointment of counsel is not necessary. Carlisle has shown the ability to effectively set forth the facts, claims and argument and otherwise prosecute his motion

---

[6] Carlisle also argues that the BOP is not allowing "attorney visits" or "access to attorney visitation" and that this Court should order USP Atlanta to grant him access to an attorney (doc. 57, doc. 59).  However, since the Court has declined to appoint counsel, this argument is moot.

for compassionate release. Additionally, the claims are not factually and legally complex or exceptional such that appointment of counsel would be warranted.

Accordingly, Carlisle's motions for appointment of counsel are DENIED.

E. Requests for a hearing

Carlisle moves the Court to set a hearing on his motions (docs. 60, 64). However, the Court has dismissed for lack of jurisdiction his motions for compassionate release, motions for the Court to award credit for time served, and his claim regarding denial of access to the Courts. Also, Carlisle's motion for compassionate release does not require a hearing. See United States v. Caraballo-Martinez, 866 F.3d 1233, 1249 (11th Cir. 2017) ("a district court is not required to hold a hearing on a § 3582(c) motion); United States v. Lee, 820 Fed. Appx, 998, 999 (11th Cir. 2020) (same). Accordingly, his requests for a hearing are DENIED.

**DONE** and **ORDERED** this 9th day of November 2020.

s / Kristi K. DuBose
KRISTI K. DuBOSE
CHIEF UNITED STATES DISTRICT JUDGE